JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
CHRISTOPHER A. BOOKER, IDAHO STATE BAR NO. 7672
ASSISTANT UNITED STATES ATTORNEY
ROBERT B. FIRPO, CALIFORNIA STATE BAR NO. 243991
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIMBER ROBERTS, BROOKS ROBERTS, and JUDY ROBERTS<br><br>Defendants. | Case No. 1:23-mj-00108-DKG<br><br>**MOTION FOR DETENTION HEARING** |

The United States moves to detain Defendants Timber Roberts, Brooks Roberts, and Judy Roberts pending trial pursuant to 18 U.S.C. § 3142(e) and (f).  A detention hearing is authorized under 18 U.S.C. § 3142(f)(2)(A)-(B) because Defendants present both a serious risk of flight and a serious risk of obstructing justice and/or threatening, injuring or intimidating witnesses. Pursuant to 18 U.S.C. § 3142(f), the Government requests that the detention hearing be continued to a date not to exceed three days from the date of the initial appearance.

With no place to live and a three-year history of aggressive and threatening behavior toward law enforcement and the public, Defendants' actual detention is ultimately appropriate in this case to ensure Defendants appear as required and to protect witnesses, the public and the public lands from Defendants unlawful conduct.

## **PROFFER OF FACT**

The Government may present evidence by way of proffer at a detention hearing, *see, e.g., United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000), and the Government intends to do so in this case.  In advance of the detention hearing and to support the Government's request for a detention hearing in the first instance, the Government proffers the attached Affidavit of Forest Service Law Enforcement Officer Stacie Lockner.  *See* Exhibit 1 (Affidavit of Stacie Lockner).  This affidavit was filed in support of a Criminal Complaint issued by the Honorable Debora K. Grasham, U.S. Magistrate Judge, on May 9, 2023.

Following the issuance of the Complaint, and prior to Defendants' arrests, Forest Service officers received an additional complaint about the Roberts Family from a member of the public. On Tuesday, May 16, 2023, a concerned citizen sent an email to the Forest Service that stated the following: "There's been a camper that has been at the west face trailhead all winter. Today while out checking trails the individuals living in the camper yelled at vehicles going by and made me very uncomfortable. Furthermore, they've left a ton of trash by the trailer and there's a trailer in the parking lot that is on its axels. I felt uncomfortable using this area because of those individuals and know they're past the 14 day camping limit."

Law Enforcement executed the arrest warrants for all three members of the Roberts Family on Friday, May 19, 2023, in the West Face Trailhead Parking lot where the family was illegally living.  During the arrest, an officer involved shooting occurred and Brooks Roberts was

injured.  A full investigation into this incident remains ongoing and the Government is not currently in possession of facts sufficient to proffer at this time.

As part of the arrest, the Roberts Family's vehicles, trailers, and other equipment located at the West Face Parking lot were seized and are now in the possession of the Forest Service.

## STANDARDS OF REVIEW

A judicial officer must hold a detention hearing under 18 U.S.C. § 3142(f)(2) where the Government moves for detention and shows that the case involves (A) a serious risk that the "person will flee," or (B) a serious risk that the person will "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  Because the Government's burden of proof at the detention hearing is a preponderance of evidence as to whether a person represents a flight risk, *see, e.g., U.S. v. Gerbo*, 948 F.2d 1118, 1121 (9th Cir. 1991), the Government's burden of proof in requesting a detention hearing on grounds that the person may flee should be low.  That is to say, if the Government can proffer facts that show that it may be able to establish that a person is a flight risk based on a preponderance of the evidence, then those facts must be considered "serious" enough to warrant a hearing in the first instance.

If the judicial officer holds a detention hearing, the judicial officer thereafter must determine at the hearing whether "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  Accordingly, at the detention hearing itself, the primary inquiries concern a person's potential to flee before trial, the danger to persons and the community if the person is not detained, and the other detention

factors outlined in 18 U.S.C. § 3142(g).  *See, e.g., U.S. v. Hinkson*, Case No. 04-cr-127-C-BLW, 2004 WL 7333645, *3 (D. Idaho July 9, 2004).

## ARGUMENT

**A. The Court Must Hold a Detention Hearing Because Defendants Pose a Serious Flight Risk and Present a Serious Risk for Obstructing Justice and/or Threatening or Intimidating Witnesses.**

Pursuant to 18 U.S.C. § 3142(f)(2), the Court must allow the Government to proceed to a detention hearing in this case because Defendants pose a serious flight risk and are at serious risk of obstructing justice or otherwise threatening or intimidating witnesses or potential jurors.

**1.  Flight risk**

As established in the proffer of fact section of this motion, Defendants lack a permanent home and instead live a transient lifestyle.  For the last three years that has manifested in Defendants unlawfully living on Forest Service and BLM public lands, often in remote locations, and often in places that are off the beaten path.  During this time Defendants have shown an ability to move locations quickly and without notice when desired because, among other things, Defendants lack family ties, are not tied to any particular location, and lack employment. Defendants have even shown a willingness to abandon personal property and commit unlawful acts in order to effectuate a quick move.  For example, when the Roberts Family left BLM land in October 2022 amidst an ongoing BLM investigation into their conduct, the family unlawfully abandoned a bus, trailer and trash at their BLM camp off Kuna-Mora Road in order to get out quickly.  The abandonment of property resulted in misdemeanor charges.

Defendants risk of flight is heightened now given that the Forest Service has seized the family's property and the Government has filed new charges against them.  Specifically, in effectuating arrest warrants on May 19, 2023, the Forest Service seized the Roberts Family's

MOTION FOR DENTENTION HEARING - 4

vehicles, trailers and other property at the unlawful camp.  That property is being held by the Forest Service at a secure location.  With no reason to return to the West Face Parking lot, no permanent residence, and a history of moving about on a whim, Defendants pose a serious risk of flight given the charges outlined in the Information, the new charges outlined in the Criminal Complaint—of which Defendants became aware at arrest—and the possibility of even more charges against the family given the encounter with law enforcement that took place on May 19, 2023.

Not only do Defendants have substantial motive to flee before trial, but they possess the means to do so.  Defendants possess financial resources, including social security and other income.  However, Defendants have consistently elected to use their financial resources not to secure permanent housing, but to acquire vehicles, equipment and other gear which enable them to live their transient lifestyle on the public lands.  For example, around the time Defendants finally agreed to leave Forest Service lands near Idaho City in 2021, Defendants purchased a bus to live in instead of using those resources to secure permanent housing.  Similarly, Defendants acquired a new Fifth-Wheel trailer to live in while unlawfully staying on BLM lands in 2022. *See also* Exhibit 1 at ¶ 23 (where BLM law enforcement expresses concern that the family was acquiring more property and vehicles).  Bottom line—Defendants are well equipped to use their financial resources to acquire new vehicles and mobile living arrangements so that they can move off the grid and disappear at a moment's notice.

Finally, and perhaps most importantly, Defendants own conduct and words establish their belief that they are above the law and will not follow rules and orders of the Court.  Again, this attitude reinforces the serious risk that Defendants will flee in this case.  Defendants casually appeared an hour late for their initial appearance on March 23, 2023, not respecting the Court's

calendar, and showing that required appearances are of no import to them.  After being late to

Court, the Court held the initial appearance and ordered Defendants not to violate the law as a

condition of release.  But again, Defendants brushed aside that important order and immediately

returned to their unlawful camp where they continued to live, disrupt the public, and threaten

people that got in their way.  It just didn't matter to the Roberts Family that they were violating

the law; they don't care.

Defendants' own statements reinforce their unwillingness to follow or respect the law.

For example, notwithstanding the unlawfulness of their public land stays over the last three

years, the family has stated that their actual possession of public lands entitles them to "squatters

rights," a patently false legal theory which the family uses as a ruse to justify their unlawful

conduct and to keep the law-abiding public out of their way.  *See, e.g.*, Exhibit #1 at ¶ 33 (where

Timber Roberts told law enforcement that possession was 9/10ths of the law, and stated "we are

possessing this land; therefore it is ours" and then noted that other peopled needed to "stay the

fuck away"); *id*. at ¶ 34 (where Timber Roberts threatened to shoot members of the public if

"they touch our stuff"); *id*. at ¶ 30 (where Timber Roberts was caught telling the public he had

purchased BLM public land to keep the public away from the family's camp).  Timber Roberts

has also stated on multiple occasions that he flat-out will not abide by the Forest Service

occupancy limits because it is "not in the Constitution or Declaration of Independence."  *See*

Exhibit 1 at ¶ 39; *see also* Exhibit 1 at ¶ 26 (where Timber Roberts states "I'm not going to obey

these stupid fucked up laws").  Court orders to appear at future hearings are likewise not in the

Constitution or Declaration of Independence, and thus by Timber Roberts' own stated standard,

there is little reason to expect him or the Roberts Family to honor future court appearances.

MOTION FOR DENTENTION HEARING - 6

For all of the above reasons, including the increasing number of charges against Defendants, and the Roberts Family's established unwillingness to follow the law, Defendants are serious risks for flight before trial.  The Government intends to establish Defendants' risk of flight by a preponderance of the evidence at the detention hearing should the Court provide it with that opportunity as required by 18 U.S.C. § 3142(f)(2).

## 2.  Risk of obstruction of justice or threats to witnesses

As noted above, Defendants have established a long-term pattern of attempting to live on the public lands unlawfully even though they know the rules and laws against such conduct. This pattern makes it extremely likely, indeed probable, that the family will continue to engage in this behavior on public lands. And if they do so in Idaho, they are likely to interact again with law enforcement officers from the Forest Service and BLM, most of whom know the Roberts Family by sight and have dealt with the family in the past.  Because most of the regional law enforcement officers for Forest Service and BLM are potential witnesses, and because the family has threatened law enforcement in the past and/or taken actions to obstruct investigations, Defendants pose a serious risk of obstructing justice or threatening witnesses in the future if they are released before trial.

Defendants have been clear, particularly Timber Roberts, that any attempt by law enforcement to enforce the laws against them, forcibly remove them from the public lands, or touch their stuff, would result in violence.  *See, e.g.*, Exhibit 1 at ¶ 34 (where Timber Roberts tells BLM law enforcement, "You touch my shit . . . Boom"); *id.* at ¶ 40(a) (where Timber tells BLM law enforcement conducting investigative activities to "leave me the fuck alone or somethings going to happen fast," and later says, "You touch our stuff and things are going to badly happen . . . Touch our shit and someone's going to go down bad."); *id.* at ¶ 40(b) (where

Timber characterizes a law enforcement officer's conduct as "treason," and notes that its "a hanging offense"); *id*. at ¶ 40(b) (where Timber tells Forest Service law enforcement that a BLM officer was "about to get his ass majorly hurt with booby traps"); *id*. at ¶ 42 (where a member of the Roberts Family stated "Then leave us the fuck alone, or there will be retaliation"); *id*. at ¶ 47(b) (where Timber tells Forest Service law enforcement, "you try to take my freedom away and its treason and you will be hung for it"); *id* at ¶ 47(d) (where Timber tells an off-duty Forest Service employee that he "would booby-trap" his belongings if any authority attempted to forcibly remove him or his stuff).  The risk that Defendants will obstruct justice or otherwise attempt to threaten or intimidate officers working on this case (who are all witnesses) is particularly heightened at this time given that law enforcement has now enforced laws against the family, physically removed them from the public lands (by means of effectuating the arrest warrants on May 19, 2023), and seized the family's vehicles and trailers (also as of May 19, 2023).  In other words, based on Defendants' own statements—and particularly those of Timber Roberts—the preconditions to violence have occurred placing Forest Service and BLM law enforcement officers at particular risk if Defendants are not detained.

## **CONCLUSION**

For all of the reasons stated above, the Government moves for detention and requests a hearing to make a more robust case for detention.  Though the misdemeanor charges currently pending against Defendants may not normally justify a detention hearing, the unique facts of this particular case, including the fact that Defendants present serious flight risks and serious risk of threats to witnesses, do justify a detention hearing.

//

//

MOTION FOR DENTENTION HEARING - 8

Respectfully submitted this 22nd day of May, 2023.


                                     JOSHUA D. HURWIT
                                     UNITED STATES ATTORNEY
                                     By:


                                     */s/ Robert B. Firpo*
                                     ROBERT B. FIRPO
                                     Assistant United States Attorney


                                     */s/ Christopher A. Booker*
                                     CHRISTOPHER A. BOOKER
                                     Assistant United States Attorney